**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANIKA TAYLOR, on behalf of D.M.T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CV-636 JAR |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Anika Taylor, the mother of Plaintiff D.M.T., brings this pro se action under Title

42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her

son's application for child's supplemental security income ("SSI") benefits under Title

XVI of the Social Security Act, 42 U.S.C. § 1381-1383. Taylor contends her son became

disabled on March 6, 2007, due to attention deficit hyperactivity disorder (ADHD).[2] (Tr.

176) The Administrative Law Judge ("ALJ") denied Plaintiff's application, finding he

was not disabled under the Act. (Tr. 54, 70-73) After carefully reviewing the record, the

Court finds the ALJ's decision is supported by substantial evidence on the record as a

whole, and the Commissioner's decision is AFFIRMED.

**I.     Procedural History**

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is therefore substituted for Michael J. Astrue as the Defendant in this action.

[2] Plaintiff's application identified asthma as a secondary diagnosis (Tr. 54); however, no allegations were made regarding asthma.

On November 16, 2009, Taylor applied for child's SSI on her son's behalf. (Tr. 135-41) The application was denied on March 3, 2010. (Tr. 54, 70-73) Taylor timely filed a hearing request. (Tr. 74) A hearing was held on March 21, 2011. (Tr. 28-53) On September 21, 2011, the ALJ issued a decision finding Plaintiff was not entitled to SSI benefits. (Tr. 10-27) On March 22, 2012, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. (Tr. 1-3) Thus, the ALJ's decision stands as the Commissioner's final decision.

## II. <u>Administrative Record</u>

### A. Hearing testimony

Taylor appeared and testified on behalf of Plaintiff at the March 21, 2011 hearing without the assistance of counsel. (Tr. 28-53) At the time of the hearing, Plaintiff was seven years old and in the first grade. (Tr. 33) Taylor testified she has three other children, all boys, ages 22, 14 and 9 at the time of the hearing. (Tr. 37) She is disabled and does not work outside the home. (Tr. 50) She is the only parent in the household and her mother helps her care for the boys. (Tr. 48, 51) Taylor also testified that Plaintiff's father and grandfather have mental issues. (Tr. 49) Plaintiff's father is diagnosed with bipolar disorder, and his grandfather is a diagnosed schizophrenic. (Tr. 49-50)

Taylor testified Plaintiff is mentally disturbed. (Tr. 33) She noticed this when he was almost three years old. (<u>Id</u>.) She removed him from daycare because of his temper tantrums, violent behavior and speech problems. (Tr. 34-35) When Plaintiff entered preschool, he was tested twice and qualified as a child with delays. (Tr. 35) According to Taylor, Plaintiff received a lot of help. (<u>Id</u>.) He had an individualized education program ("IEP") and received in-class and resource room assistance. (Tr. 35-36, 39) Plaintiff's

most recent grades indicated he was not where he was supposed to be and had not reached his goals. (Tr. 44)

Taylor stated her son stayed to himself at school and had no friends at home because children were afraid of him. (Tr. 37, 46) According to Taylor, Plaintiff does not get along with his brothers and fights constantly with his nine-year old brother. (Tr. 37-38) Plaintiff received physical therapy in preschool for problems with his hands, that is, fine motor skills. (Tr. 39) Currently, Plaintiff receives help through his IEP with his writing skills, speech and math. (Id.) She has received a few calls from school about Plaintiff not paying attention in class and acting out in anger. (Tr. 42-43)

Plaintiff has been seeing a psychiatrist since November 2010 for bipolar, depression, and other conditions she could not pronounce. (Tr. 40-41) Taylor stated Plaintiff was on "five or six" different medications. (Tr. 41) Plaintiff has trouble sleeping. (Tr. 49) He will not sit still. (Id.) He continues to have issues with bedwetting at night and daytime accidental wetting. (Tr. 42-43)

Taylor testified she has tried to establish a routine for Plaintiff when he comes home from school. (Tr. 45) He has to do his homework first. Then, he sits around and usually keeps to himself. (Id.) He plays with action figures but doesn't like sharing. (Tr. 47) She doesn't allow Plaintiff to play with video games very often. (Tr. 47)

**B.  School records**

**ECSE evaluation (2008)**

On December 12, 2007, Plaintiff was evaluated by the Pattonville School District Early Childhood office to determine his eligibility for Early Childhood Special Education (ECSE) services in the areas of speech, language, and social/emotional/behavioral skills.

(Tr. 152) Kathryn Fogarty, ECSE Educational Diagnostician, reported that while Plaintiff demonstrated minimal interactions with adults and peers, and often seemed unaware of others, he also demonstrated "an above average" attention span during his preferred play activity and appropriate play schemes even though he stayed to himself. (Id.) Plaintiff did not exhibit any aggressive or disruptive behaviors. (Id.) Trisha Buenemann, ECSE Speech Pathologist, administered the Goldman Fristoe Test of Articulation -2 and the Pre-School Language Scale-4 (PLS-4) to Plaintiff. He demonstrated difficulty understanding vocabulary and concepts, following directions incorporating concepts, answering questions appropriately and using age appropriate sentence length and complexity. (Tr. 153) Plaintiff was also administered the Leiter International Performance Scale-Revised (LIPS-S) by Dorothy S. Nix, ECSE Psychologist Examiner. (Tr. 152) He scored in the Low range with a Brief IQ Standard Score of 77; however, Nix noted the score was not an accurate reflection of Plaintiff's skill level given his performance inconsistencies and lack of effort. Plaintiff was diagnosed as Young Child with a Development Delay on January 30, 2008. (Tr. 151-161)

**Individualized Education Plan (2009)**

Plaintiff's initial IEP dated March 6, 2009, noted difficulties in social, emotional and behavioral skills which negatively affected his ability to interact appropriately with peers, participate in non-preferred activities, consistently follow directions in a timely manner, and attend to group activities consistently. (Tr. 148) It was also noted that since his earlier evaluation, Plaintiff had become somewhat more outgoing in his interactions with peers and his attention to task and transition had improved. His pre-academics were

developing nicely and he was able to verbally interact with peers and adults with 80% accuracy when he chose to do so. (Tr. 149)

### Teacher questionnaires (2010)

On January 11, 2010, Plaintiff's special education teacher Karen Todd completed a teacher questionnaire. (Tr. 185-192) Todd indicated that in terms of acquiring and using information, Plaintiff had an "obvious" problem comprehending and/or following oral instructions, understanding and participating in class discussions, expressing ideas in written form, and applying problem-solving skills in class discussions. He had a "slight" problem providing organized oral explanations and adequate descriptions. (Tr. 187) In terms of attending and completing tasks, Plaintiff had a "slight" problem paying attention when spoken to directly, focusing long enough to finish tasks, refocusing to task when necessary, carrying out single-step instructions, organizing things, completing assignments, and working without distracting himself or others. (Tr. 188) He had "obvious," but not "serious," problems carrying out multi-step instructions, completing work accurately without mistakes, and working at a reasonable pace/finishing on time. (Tr. 188) Plaintiff had no problem waiting to take turns or changing activities without being disruptive and had only "slight" to no problems in interacting and relating with others. (Tr. 189)

On January 19, 2010, Plaintiff's kindergarten teacher Shelly McManus also completed a teacher questionnaire. (Tr. 194-201) McManus reported Plaintiff was below average in reading, math, and written language. (Tr. 194) He had "obvious" problems in acquiring and using information, including comprehending and/or following instructions, expressing ideas, learning new material and applying problem-solving skills in class. (Tr.

195) In terms of attending and completing tasks, Plaintiff had no problem paying attention when spoken to, sustaining attention during play/sports activities, focusing long enough to finish assignments, refocusing on task when necessary, waiting to take turns, changing activities without being disruptive, and working without distracting himself or others (Tr. 196). McManus also indicated Plaintiff had "obvious," but not "serious," problems carrying out instructions, organizing his own things, completing class/homework assignments, completing work accurately, and working at a reasonable pace (Tr. 196). Plaintiff had no problems interacting and relating with others, moving and manipulating objects, and caring for himself. (Tr. 197-199) He was not prescribed medication. (Tr. 200)

**Individualized Education Plan (2010)**

An IEP dated May 14, 2010 (Tr. 228-251) indicated that Plaintiff's diagnosis was changed from Young Child with a Developmental Delay to that of Other Health Impairment, specifically a medical diagnosis of ADHD. (Tr. 233) Despite this diagnosis, Plaintiff was not taking medication at this time. (Tr. 234, 237-38, 244) The diagnostic team certified that Plaintiff required special education and related services. (Tr. 244) Throughout the testing session, the team noted that Plaintiff attempted all assigned tasks, but required some repetition of questions or directions, as well as some redirection to task. (Id.) Results of cognitive testing indicated that Plaintiff's overall cognitive functioning remained within the "borderline" range, consistent with the previous findings in January 2008; however, inconsistencies were noted in his performance. For example, he demonstrated nonverbal reasoning and quantitative skills within the "average" range, while memory skills were very depressed. (Id.)

Behavior rating scales were completed by Taylor and McManus. (Tr. 245) At risk levels of attention problems were reported in both home and school settings. Significant levels of hyperactivity and lack of impulse control at home were also reported by Taylor. (Tr. 247) Plaintiff was reported to have a short attention span and easily distracted. (Tr. 245) McManus observed Plaintiff often appeared sad or lonely. He was pessimistic or negative about things and complained about being teased. Likewise, Taylor indicated her son always complained about being teased, changed moods quickly, and was often easily upset or cried easily. (Id.)

Plaintiff's classroom teachers indicated he was below average in communication and social skills. He did not follow teacher directions, used nonverbal communication, did not speak clearly or distinctly, did not use politeness markers, or verbally express his feelings. (Id.) His medically diagnosed ADHD resulted in inconsistency in skill acquisition and classroom performance. (Tr. 247) He could complete nonverbal reasoning tasks, but struggled with tasks involving memory. Task initiation, task focus and memory were areas identified as significant concerns by his classroom teacher. (Id.) While able to perform math tasks and identify words within expectancies, Plaintiff lacked book handling skills and exposure to common concepts. (Id.) Class room observations, review of daily work, test results, and teacher interviews revealed that Plaintiff was consistently performing below expectancy in the classroom and needed additional support in the areas of attention span, work completion and social skills. (Id.)

**Teacher questionnaires (2011)**

On May 23, 2011, Plaintiff's special education teacher Michelle Trautman completed a teacher questionnaire. (Tr. 256-263) She assessed his current instructional

level for reading at a kindergarten level. (Tr. 256) She also indicated that Plaintiff had missed 24 days of school between August 10 and April 11, and had been tardy an additional 5 days (Tr. 256).

In the area of acquiring and using information, Trautman indicated Plaintiff had an "obvious" problem in comprehending and doing math problems, and "serious" problems in comprehending and following instructions, understanding vocabulary, reading and comprehending written material, participating in class discussions, providing organized explanations, expressing ideas in writing, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (Tr. 257)

In the area of attending and completing tasks, Trautman indicated Plaintiff had a "serious" limitation only in carrying out multi-step instructions, and "slight" problems waiting to take turns, changing from one activity to another without being disruptive and completing assignments. (Tr. 258) Plaintiff had "obvious," but not "serious," paying attention when spoken to, sustaining attention during play/sports activities, focusing long enough to finish assignments, refocusing to task when necessary, carrying out single-step instructions, organizing his own things, completing work accurately, working without distracting himself or others, and working at a reasonable pace. (Tr. 258)

Trautman observed that in the area of interacting and relating with others, Plaintiff had an "obvious" problem playing cooperatively with other children, and "slight" problems in making and keeping friends, seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, respecting adults in authority, relating experiences and telling stories, using language

appropriate to the situation and listener, maintaining conversation, taking turns in conversation, and using adequate vocabulary and grammar to express himself in conversation. (Tr. 259) She observed no problems in Plaintiff's ability to move about and manipulate objects (Tr. 260) and only "slight" problems in caring for himself. (Tr. 261)

Also on May 23, 2011, Plaintiff's classroom teacher Amber Wilson completed a teacher questionnaire. (Tr. 321-329) Wilson assessed Plaintiff's current instructional level for reading, math and written language at a kindergarten level. (Tr. 321) He received resource help daily. She also indicated that Plaintiff was frequently absent from school. (Id.) Wilson reported Plaintiff had "serious" problems with acquiring and using information, including reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and descriptions, expressing ideas in writing, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (Tr. 322) Plaintiff had "obvious" problems in understanding vocabulary and participating in class, and only a "slight" problem comprehending and/or following oral instructions. (Id.)

In terms of attending and completing tasks, Wilson observed that Plaintiff had "serious problems" carrying out multi-step instructions, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time (Tr. 323). He had "obvious," but less than "serious," problems focusing on tasks long enough to finish, organizing material, and completing classwork and homework. (Id.) Plaintiff had only "slight" problems paying attention when spoken to, refocusing to task, carrying out single-step instructions, changing activities without being disruptive, and working without distracting others. (Id.)

"Slight" problems were noted in Plaintiff's ability to interact and relate with others, including playing cooperatively with other children, using appropriate language, taking turns in a conversation, and interpreting the meaning of facial expressions, body language and the like. (Tr. 324) No problems were noted in Plaintiff's ability to move about and manipulate objects. (Tr. 325) In terms of caring for himself, Wilson indicated that Plaintiff had a "severe" problem in knowing when to ask for help, but had shown improvements in this area during the last few months of school. (Tr. 326) Only slight or no problems were noted in other activities. (Tr. 326)

### C. Medical records

Psychologist Jerry J. Bosse, Ph.D., met with Plaintiff on February 19, 2007 and March 19, 2007 and diagnosed him as Attention Deficit-Hyperactivity Disorder, Combined Type. (Tr. 275-279) In his April 2011 questionnaire, Dr. Bosse indicated he had long term concerns about Plaintiff, apparently based on Taylor's statements that Plaintiff's father and grandfather were diagnosed with bipolar disorder and schizophrenia. (Tr. 306-318)

In an April 12, 2011 questionnaire, Rolando LaRice, M.D., Plaintiff's treating psychiatrist since September 22, 2010, stated that his diagnoses were oppositional defiant disorder, ADHD, a learning disability by history, major depressive disorder and enuresis by history. (Tr. 304) Dr. LaRice noted Plaintiff was noncompliant with medication and psychotherapy. (Id.) He was hyper, but off all medication per pharmacy records. Whether Plaintiff's impairment limited his age-appropriate behavior was unknown. Dr. LaRice had never seen Plaintiff compliant with medication. He prescribed five medications for Plaintiff, the last one in February 2011, but Plaintiff's mother did not fill it. Dr. LaRice

concluded that Plaintiff could participate fully with appropriate medication and psychotherapy. (Tr. 305)

### III.    <u>ALJ's Decision</u>

The ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. The ALJ found Plaintiff's impairment of attention deficit-hyperactivity disorder to be severe, but not to meet or medically equal the severity of any impairment in the listings of impairments. The ALJ also found Plaintiff's impairment did not functionally equal the severity of the listings. The ALJ thus determined Plaintiff not to have been disabled at any time since the filing of the application, that is, November 16, 2009. (Tr. 17–28)

### IV.    <u>Legal Standard</u>

The Commissioner's decision denying a child SSI benefits is reviewed by this Court to determine whether it is supported by substantial evidence. <u>N.R.R. ex rel. Davenport v. Astrue</u>, 2013 WL 1090397, at *5 (E.D. Mo. Mar. 15, 2013) (citing <u>Rucker v. Apfel</u>, 141 F.3d 1256, 1259 (8th Cir.1998); <u>Clark v. Apfel</u>, 141 F.3d 1253, 1255 (8th Cir.1998); <u>Frankl v. Shalala</u>, 47 F.3d 935, 937 (8th Cir.1995)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." <u>Cox v. Apfel</u>, 160 F.3d 1203, 1206–07 (8th Cir.1998).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

    (1) the credibility findings made by the ALJ;

    (2) the education, background, work history, and age of the claimant;

    (3) the medical evidence given by claimant's treating physicians;

(4) the subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) the corroboration by third parties of the claimant's physical impairment;

(6) the testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) the testimony of consulting physicians.

Brand v. Sec'y of Dept' of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir.1980).

The Court must also take into account evidence in the record that fairly detracts from that decision. Davenport, 2013 WL 1090397, at 5 (citing Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999); Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir.1998); Bryant v. Apfel, 141 F.3d 1249, 1250 (8th Cir.1998)). The Court may not reverse the decision merely because substantial evidence would also support a different result. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## V.     Discussion

Title 42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered to be disabled for purposes of [SSI] if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." A three-step sequential evaluation process is used to determine disability for children. Fleetwood v. Astrue, 2013 WL 395614, at *1 (W.D. Mo. Jan. 31, 2013); 20 C.F.R. 416.924(a). First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's

impairment(s) is severe, the Commissioner must determine whether such impairment(s) meets, medically equals or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations. 20 C.F.R. § 416.924(a); <u>Garrett ex rel. Moore v. Barnhart</u>, 366 F.3d 643, 647 (8th Cir.2004). If the impairment(s) meets or medically equals a Listing, the child is disabled. <u>Garrett</u>, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals the Listings. 20 C.F.R. § 416.926a. To functionally equal a listed impairment, the child's condition must result in an "extreme" limitation of functioning in one broad area of functioning, or "marked" limitations of functioning in two broad areas of functioning. 20 C.F.R. § 416.926a(a). If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. <u>Randall ex rel. D.M. v. Astrue</u>, 2011 WL 1226970, at *14 (E.D.Mo. Mar. 29, 2011) (citing <u>Oberts o/b/o Oberts v. Halter</u>, 134 F.Supp.2d 1074, 1082 (E.D.Mo. 2001)).

Taylor argues the ALJ erred in determining that her son was not disabled. She does not, however, refer to any specifics of the ALJ's decision, Social Security regulations, or case law. Because the Court is compelled to conduct a *de novo* review, the Court will analyze the ALJ's findings that Plaintiff's impairment does not meet or medically or functionally equal a listed impairment as well as his evaluation of the opinion evidence and credibility.

To meet the listing requirements, a child claimant's ADHD must be manifested by "developmentally inappropriate degrees of inattention, impulsiveness, and

hyperactivity." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11. The required level of severity for this disorder is met when there are "medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity," id. at § 112.111A, resulting in at least two of the appropriate age-group criteria:

For children (age 3 to attainment of age 18) . . .

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings . . .; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings . . . ;or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings . . .; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.02(B)(2).

The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926)." (Tr. 18) Upon review of the record, the Court finds that substantial evidence supports this finding. The ALJ based his determination on the lack of medically documented findings of marked inattention, impulsiveness, and hyperactivity, as well as marked impairment in age-appropriate cognitive/communicative function, social functioning, personal functioning, or marked difficulties in maintaining concentration, persistence, or pace. (Id.) In point of fact, the evidence indicated that Plaintiff was not regularly taking medication to manage his ADHD. Plaintiff's school nurse reported that Plaintiff was not on any medication. (Tr. 200) Plaintiff's May 2010 IEP indicated he was not taking any medication for ADHD. (Tr. 234, 244) Plaintiff's treating psychiatrist

Rolando LaRice, M.D., was unable to opine whether Plaintiff's ADHD limited his age-appropriate behavior since he had never seen Plaintiff compliant with medication and concluded that Plaintiff could participate fully with appropriate medication and psychotherapy. (Tr. 305) Impairments that are amenable to treatment do not support a finding of disability. Fleetwood, 2013 WL 395614, at *3 (citing Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)). Moreover, the fact that Plaintiff's mother did not consistently administer his medication suggests his symptoms were not as severe as she described.  A parent's failure to consistently administer effective medication as prescribed without good reason can be a proper ground for denying benefits. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). See also Collins ex rel. Williams v. Barnhart, 335 F .3d 726, 729–30 (8th Cir.2002) (finding that denial of benefits is supported when a child's hyperactivity can be controlled through properly administered medication).

As discussed in detail above, the evidence from Plaintiffs' teachers indicates some problems with attention, but no "very serious problems" in any area. (Tr. 188, 196, 258, 323) Plaintiff had only 4 ratings of a "serious" problem out of a total of 52 ratings. (Id.) Again, this evidence does not support the required "marked" levels of inattention, impulsiveness and hyperactivity necessary to meet Listing 112.11.

To establish functional equivalence, a child must have a medically determinable impairment or combination of impairments resulting in "marked" limitations in two areas, or an "extreme" limitation in one area. 20 C.F.R. § 416.926a(e)(2)(i).  Six areas of functioning are considered: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and

manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A child has a "marked" limitation in one of these area when his or her "impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "Marked" also means a limitation that is "more than moderate" but "less than extreme." Id. A child has an "extreme" limitation when his or her "impairment(s) interferes "very seriously" with his or her ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation is the rating given to the most limiting impairments, but "extreme" does not necessarily mean a total lack or loss of ability to function. Fleetwood, 2013 WL 395614, at *1.

To determine whether the child is experiencing "marked" or "extreme" limitations in any area of functioning, the ALJ must review all the evidence in the record and compare the child's functioning to "the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1). See also 20 C.F.R. § 416.924a(b)(5)(ii); 20 C.F.R. § 416.926a(b). The ALJ considers "the effects of structured or supportive settings," how the child functions in school, and the effects of the child's medications, if any. 20 C.F.R. § 416.926a(a)(1)-(3). Finally, in determining a child's disability, the Commissioner must consider all relevant evidence, which may include medical evidence and information from people who know the child—such as parents and teachers—and can provide evidence about his functioning. 20 C.F.R. § 416.924a(a).

In his decision, the ALJ thoroughly discussed all the evidence before him, including reports from Plaintiff's mother, teachers, and physicians and found that Plaintiff "does not have an impairment or combination of impairments that functionally

equals the severity of the listings (20 C.F.R. 416.924(d) and 416.926(a)." Upon review of the record, the Court finds that substantial evidence supports this finding.

First, the ALJ's determination that Plaintiff had no limitation in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being was consistent with the reports of his teachers, all of whom indicated only slight to no limitation in these domains. (Tr. 190-92, 198-200, 260-62, 325-27)

Next, the ALJ determined that Plaintiff had "less than marked" limitations in the domain of acquiring and using information. In assessing this domain, the ALJ must consider "how well [the child] acquires and learns information, and how well [the child] used information learned." 20 C.F.R. §416.926a(g). Pursuant to the Regulations, children Plaintiff's age (age six to age twelve) should be able to

> learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

Despite his mother's testimony that he was "significantly limited" in this domain, the ALJ noted Plaintiff's 2010 IEP indicated that he showed a willingness to learn. (Tr. 233) He demonstrated "average" ability to identify upper and lower case letters and sounds. Plaintiff does not read sight words independently, but his word analysis skills were sufficient to allow him to pick the correct word from a group of four. Plaintiff was able to perform math tasks within expectancies, writing two-digit numbers, counting by

tens, and performing mental addition with sums under 10. IEP evaluators reported Plaintiff's memory skills were depressed, but not his intelligence measures. (Tr. 21, 246-47) The ALJ further noted that the record contained only one IQ test result – a brief IQ standard score in the low range of 77. (Tr. 21) However, Dorothy Nix, the test administrator, opined that this score was not an accurate reflection of Plaintiff's overall cognitive functioning given his lack of effort. (Id.) A "marked" limitation is the equivalent of the functioning on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2)(i). Here, Plaintiff's IQ scores were not more than two standard deviations below the mean. See Ulric Neisser, Rising Scores on Intelligence Tests, American Scientist Sept.-Oct. 1997, 440-47.[3] Furthermore, the regulations state that the ALJ does not have to give conclusive effect to any particular test score. 20 C.F.R. § 416.926a(e)(4)("[W]e will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."). Although the record shows that Plaintiff experiences some limitations in this domain, there is substantial evidence on the record as a whole to support the ALJ's conclusion that such limitations do not rise to a level to be considered "marked" under the Regulations. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855-56 (8th Cir. 2003) (no more than a moderate limitation where school records show child capable of doing work and that overall condition is improving with medication and counseling).

The ALJ also determined that Plaintiff had "less than marked" limitations in the domain of interacting and relating to others. (Tr. 24) This domain considers how well the child initiates and sustains emotional connections with others, develops and uses the

---

[3] Available at http://www.americanscientist.org/issues/feature/rising-scores-on-intelligence-tests/2

language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Children of Plaintiff's age (age six to age twelve) should be able to

> Develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i) (2)(iv). Upon review of the record, the Court finds that substantial evidence supports the ALJ's decision in this regard. Plaintiff's mother reported her son was violent, exhibited temper tantrums and had no friends because children were afraid of him; however, his classroom teachers did not indicate any significant concerns in this area. (Tr. 189, 259, 324) Plaintiff's early childhood evaluation from 2008 noted he did not exhibit aggressive or disruptive behaviors. (Tr. 152) His 2009 IEP noted that his difficulties in social/emotional/behavior skills somewhat affected his ability to interact appropriately with peers and that he needed a lot of assistance to join in with others. Once engaged, however, he was usually okay. (Tr. 148) His 2010 IEP noted that Plaintiff was helpful to the teacher and his peers. (Tr. 233) He followed school and classroom rules and could identify appropriate behavior and consequences for inappropriate behavior. (Tr. 234) The school psychologist reported Plaintiff's behavior was comparable to that of peers on the playground. He engaged in activities with peers, joined a game that was in progress, and interacted with peers. (Tr. 245) As the ALJ noted, in 2010, IEP evaluators attributed some of Plaintiff's withdrawn behavior and increased difficulty dealing with others to the fact that he was adjusting to his father leaving the family home. (Tr. 238) Situational symptoms are not a basis for an award of disability

benefits. See Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010). The ALJ reiterated that Plaintiff was not compliant with his medication.  (Tr. 24)

The ALJ found the only domain in which Plaintiff had a "marked" impairment was in attending and completing tasks. (Tr. 22) This domain gauges how well a child is able to focus and maintain his attention, and how well the child can begin, carry through, and finish his activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h). Children of Plaintiff's age (age six to age twelve) should be able to

> focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work.... You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

The record shows that none of Plaintiff's teachers indicated he had "very serious" problems in the domain of attending and completing tasks. In the vast majority of ratings, his teachers did not even describe his symptoms as "serious." (Tr. 188, 196, 258, 323) However, his kindergarten teacher also reported that Plaintiff would work hard the entire time, but his completed work may not be what was asked of him. (Tr. 196) His first grade teacher noted Plaintiff needed repeated reminders to stay on task. (Tr. 322) Moreover, his 2010 IEP noted "significant attentional concerns" in task initiation, focus, and memory. (Tr. 245) Specific examples cited included delays in beginning activities, refusal to initiate tasks, difficulty following directions, appearing preoccupied, becoming easily

distracted, losing interest when listening, not recalling details from stories, misplacing items, difficulty remembering routines, forgetting what he is supposed to do, and not remembering information from one day to the next. (Id.) The ALJ specifically noted that while Plaintiff's medically diagnosed ADHD appeared to result in inconsistency in skill acquisition and classroom performance, his psychiatrist believed Plaintiff would have no problem in this area if he were compliant with medication and psychotherapy. (Tr. 23) Upon review of the record, the Court finds that substantial evidence supports the ALJ's decision in this regard. With only a "marked" limitation in one out of the six functional domains, Plaintiff does not functionally equal a listing and is not entitled to child's SSI benefits. See 20 C.F.R. § 416.926a(d).

In a child's SSI case, the ALJ must make specific findings concerning the credibility of a parent's testimony, just as he would if the child were testifying for himself. See 20 C.F.R. § 416.928(a). See also, Randall ex rel. D.M., 2011 WL 1226970, at *22 (citing Williams o/b/o Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir.1988)). In his written decision, the ALJ set out a number of inconsistencies in the record to support his finding that Taylor's testimony regarding the extent of Plaintiff's limitations was not credible. In particular, the ALJ noted that while Taylor testified Plaintiff is taking a lot of medication, the record shows Plaintiff was not regularly taking the medication prescribed by his physician to manage his ADHD. (Tr. 19-20, 200, 234, 244, 304) "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). The ALJ also noted that contrary to Taylor's reports of Plaintiff's behavior problems and trouble getting along with other children, his teachers indicated otherwise, observing him to be more

withdrawn than aggressive. Because substantial evidence in the record supports this finding, the Court will not substitute its judgment for the ALJ. When adequately explained and supported, credibility determinations are for the ALJ to make. N.R.R. ex rel. Davenport v. Astrue, 2013 WL 1090397, at *8 (E.D. Mo. March 15, 2013) (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).

## V. Conclusion

For the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, Plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying Claimant's application for SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383 is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Defendant.

[20, 25]

Dated this 19th day of July, 2013.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE